IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ECKO ENTERPRISES, INC. and<br>THE PHILANTHROPY GROUP, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>No. 07-120C<br>(Judge Firestone) |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' complaint for lack of subject matter jurisdiction.[1] In support of this motion, we rely upon the complaint, its attachments, and the following brief.

**DEFENDANT'S BRIEF**

**STATEMENT OF THE ISSUES**

(1) Whether the non-appropriated funds doctrine serves as a jurisdictional bar to this Court's authority to entertain plaintiffs' complaint.

(2) Whether the complaint should be dismissed for plaintiffs' failure to submit a claim to the contracting officer pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601 - 613.

---

[1] In their complaint, plaintiffs bring suit against Secretary of Agriculture Mike Johnson. Compl. at 3. This Court does not possess jurisdiction to entertain suits against individuals, even individuals who are Federal officers. Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997); Cottrell v. United States, 42 Fed. Cl. 144, 148 (1998). See also United States v. Sherwood, 312 U.S. 584, 588 (1941) ("if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court . . . "). The Court should therefore dismiss all claims against Mr. Johnson.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Plaintiffs, ECKO Enterprises, Inc. ("ECKO") and The Philanthropy Group, Inc. ("TPG"), filed a complaint in this Court on February 21, 2007. Plaintiffs allege that the National Pork Board ("Board") breached a contract with plaintiffs by failing to give them valid notice of termination. Plaintiffs demand that the case proceed to arbitration, or in the alternative seek damages of $180,000, plus consequential damages and any other relief the Court deems just and proper.

### II. Statement Of The Facts[2]

TPG is an Iowa corporation that provides "funding, fund-raising, organization development, marketing and technology solutions for charitable organizations and other public-benefit organizations." Compl. ¶ 1; Attach. A(1).[3] TPG is a division of Ecko. Attach. A(1).

In 1985, Congress passed the Pork Promotion, Research and Consumer Information Act. 7 U.S.C. § 4801. The purpose of the Act is:

> to authorize the establishment of an orderly procedure for financing, through adequate assessments, and carrying out an effective and coordinated program of promotion, research, and consumer information designed to –
> (A) strengthen the position of the pork industry in the marketplace; and
> (B) maintain, develop, and expand markets for pork and pork products.

7 U.S.C. § 4801(b)(1). The Act further provides that such procedure "shall be implemented, and

[2] For the purposes of this motion only, we accept as true the factual allegations set forth in the complaint.

[3] "Compl. ¶ __" is a citation to plaintiffs' February 21, 2007 complaint. "Attach.__" is a citation to one of the attachments to the complaint.

such program shall be constructed, at no cost to the Federal Government." 7 U.S.C. § 4801(b)(2) (emphasis added).

The statute provides for the creation of a 15-member National Pork Board, 7 U.S.C. § 4808(a)(1), which is tasked with developing proposals for "promotion, research, and consumer information plans and projects" for the promotion of pork. 7 U.S.C. § 4808(b)(1)(A). The Board (and other programs provided by the statute) are funded through an assessment paid by pork producers on each porcine animal sold by, or imported into, the United States. 7 U.S.C. § 4809; 7 C.F.R. § 1230.71. The Board may enter into contracts or agreements for the development and conduct of activities relating to pork promotion, and the payment of the costs therein, with funds collected through assessments. 7 U.S.C. § 4808(4)(A). The Secretary of Agriculture has a supervisory role over the Board, and can issue and amend orders relating to pork promotion, 7 U.S.C. §§ 4803, 4808. The statute authorizes sums to be appropriated for the Secretary to carry out the duties provided in the statute, but such sums must be reimbursed by assessed funds. 7 U.S.C. § 4819(a); 7 C.F.R. § 1230.73(4).

In April 2003, ECKO and TPG "started working with the Board concerning various projects." Compl. ¶ 6. This work continued through 2003 and 2004. Compl. ¶ 7-9. Ecko, TPG, and the Board entered into a contract for consulting and fund-raising services to be provided by plaintiffs during 2005. Compl. ¶ 10; Attach. A(1). ECKO and TPG allege that the Board has breached the terms of the 2005 contract, Compl. ¶ 17, and accordingly filed this suit against the Government on February 21, 2007.

## ARGUMENT

### I. Plaintiffs' Complaint Should Be Dismissed Because This Court Does Not Possess Jurisdiction To Entertain Their Claim

### A. Standard of Review

This Court may grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when in view of the record presented, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Johnson Controls World Servs., Inc. v. United States, 44 Fed. Cl. 334, 340 (Fed. Cl. 1999) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))); accord McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997). Moreover, although the factual allegations, as pled, must be presumed true and viewed most favorable to the non-movant, the burden of establishing the Court's jurisdiction, as well as the viability of purported claims, falls squarely upon the non-movant. Johnson Controls, 44 Fed. Cl. at 340; McCauley, 38 Fed. Cl. at 262-63; Rice v. United States, 31 Fed. Cl. 156, 161 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table).

### B. The Court Does Not Possess Jurisdiction To Entertain Contract Claims Against A Non-Appropriated Fund Instrumentality

Plaintiffs rely upon the Tucker Act, 28 U.S.C. § 1491(a)(1), to invoke this Court's jurisdiction over their complaint. Compl. ¶ 5. As discussed below, however, the non-appropriated funds doctrine provides that the Tucker Act confers no jurisdiction over claims based on contracts made by a non-appropriated fund instrumentality ("NAFI"). Lion Raisins Inc. v. United States, 416 F.3d 1356, 1365 (Fed Cir. 2005). Because jurisdiction is wanting in this case, plaintiffs' complaint should be dismissed.

Through the Tucker Act, Congress waived "the Federal government's sovereign immunity and defined the jurisdiction of the Court of Federal Claims with respect to claims against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." Furash & Co. v. United States, 252 F.3d 1336, 1338-39 (Fed. Cir. 2001) (quoting 28 U.S.C. § 1491; United States v. Mitchell, 463 U.S. 206, 212 (1983)). Section 2517 of title 28 states that "every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation." 28 U.S.C. § 2517 (a).

In Furash & Co. v. United States, the United States Court of Appeals for the Federal Circuit stated:

> [t]he jurisdictional grant in the Tucker Act is limited by the requirement that judgments awarded by the Court of Federal Claims must be paid out of appropriated funds. 28 U.S.C. § 2517. Based on that requirement, it has been held that absent some specific jurisdictional provision to the contrary the Court of Federal Claims lacks jurisdiction over actions in which appropriated funds cannot be used to pay any resulting judgment . . .

252 F.3d at 1339 (citing L'Enfant Plaza Props., Inc. v.United States, 668 F.2d 1211 (Ct.Cl. 1982); Kyer v. United States, 369 F.2d 714 (Ct. Cl. 1966); United States v. Hopkins, 427 U.S. 123, 125-26 (1976)).

NAFIs are "federal government entities whose 'monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.'" El-Sheikh v. United States, 177 F.3d 1321, 1322 (Fed. Cir. 1999) (quoting Cosme Nieves v. Deshler, 768 F.2d 445, 446 (1st Cir. 1986)). "The sina qua non of all NAFIs is apparent in their name: they do not receive appropriated funds." AINS, Inc. v. United States, 365 F.3d 1333, 1337 (Fed. Cir. 2004). The Federal Circuit repeatedly has held that the Tucker Act confers no

jurisdiction over claims based on contracts made by NAFIs.[4] Lion Raisins, Inc., 416 F.3d at 1365. The NAFI cases "apply '[t]he general rule ... that the Court of Federal Claims lacks jurisdiction to grant judgment against the United States on a claim against a NAFI because the United States has not assumed the financial obligations of those entities by appropriating funds to them.'" Id. at 1365-66 (quoting El-Shiek v. United States, 177 F.3d 1321, 1324 (Fed. Cir. 1999)). The theory of the NAFI cases is that NAFIs are separate entities from the United States Government. Id. at 1366. "Such separate entities may make contracts that bind the entities themselves," but such contracts are only binding on the United States "if the separate entity has the authority to obligate appropriated funds." Id., (citing Kyer v. United States, 369 F.2d 714, 718 (Ct. Cl. 1966)). NAFIs are not recipients of appropriated funds, and thus cannot contractually obligate the United States. Id.

The National Pork Board is a NAFI, and thus this Court does not possess jurisdiction to entertain contract claims against it. The Federal Circuit has distilled a four-factor test to determine whether a government instrumentality is a NAFI. AINS, Inc. v. United States, 365 F.3d at 1342. A government instrumentality is a NAFI if:

> (1) It does 'not receive its monies by congressional appropriation;' (2) It derives its funding 'primarily from [its] own activities, services and product sales;' (3) Absent a statutory amendment, there is no situation in which appropriated funds

[4] There is one limited exception to this general rule. In 1970, Congress examined the non-appropriated funds doctrine and entertained proposals to abolish it. Instead, Congress chose to "create a narrow exemption from the doctrine for certain entities, the military post exchanges and the exchange councils of the National Aeronautics and Space Administration." Furash, 252 F.3d at 1339 (citing McDonald's Corp. v. United States, 926 F.2d 1126, 1129-33 (Fed. Cir. 1991)). Congress waived the sovereign immunity of the United States under the Tucker only for those enumerated NAFIs. See 28 U.S.C. § 1491 (a)(1). The Board is not one of the enumerated NAFIs. Id.

> could be used to fund the federal entity; and (4) there is a 'clear expression by Congress that the agency was to be separated from general federal revenues.'

Id. (internal citations omitted).

The Board meets all these factors, and thus is a NAFI. The first two factors are easily met in this case. The Board does not receive its monies by Congressional appropriation, but from assessments placed on pork producers. 7 U.S.C. § 4809; 7 C.F.R. § 1230.71. These assessments are the Board's only source of funding. 7 U.S.C. § 4809(3).

The AINS court refers to the third factor as "particularly challenging, because it is always difficult to prove a negative - here, the unavailability of appropriated funds absent a statutory amendment." AINS, 365 F.3d at 1344. In this case, however, it is clear that appropriated funds cannot be used to fund the Board. While the statute allows the Secretary of Agriculture to use appropriated funds to carry out his duties under this statutory chapter, such funds must be reimbursed by the Board from assessed funds. 7 U.S.C. §§ 4819(a), 4809(c)(3)(B)(iv). Furthermore, the same section states that "[s]ums appropriated to carry out this chapter shall not be available for payment of an expense or expenditures incurred by the Board in administering an order." 7 U.S.C. § 4819(b). Finally, although the Federal Circuit in AINS stated that fourth factor is "often the least obvious" because Congressional intent is not always explicit, 365 F.3d at 1344, in this case the intent of Congress is clear: section 4801(b)(2) of title 7 explicitly states that the entire pork promotion scheme "shall be implemented at no cost to the United States." This is a clear expression that Congress intended the Board's business to be conducted without impacting general federal revenues.

Courts have found organizations similar to the Board to be NAFIs. A direct analogy to the Board can be found in this Court's cases dealing with the status of marketing agencies under

the Agricultural Marketing Agreement Act of 1937 ("AMAA"). The AMAA provides for a cooperation between the Secretary of Agriculture, agricultural producers, and handlers to "raise the price of agricultural products and establish an orderly systems for marketing them." Lion Raisins, 416 F.3d at 1358 (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 346 (1984)). The statute operates through the issuing of marketing orders relating to pricing, and authorizes the creation of marketing committees to implement the orders. Id. At least two marketing committees, the Raisin Administrative Committee ("RAC"), and the Grape Crush Administrative Committee ("GGAC"), have been found by courts to be NAFIs. See Lion Raisin, 416 F.3d at 1359-64 ("The RAC is funded by assessments paid by handlers; it receives no funding from Congress. . . . The RAC is a NAFI."); Kyer v. United States, 369 F.2d at 718-719 (stating that the court had no jurisdiction over the GCAC because it did not receive any funding from Congress.). The Board has a similar funding scheme to the AMAA marketing committees, and is also a NAFI, and therefore the complaint should be dismissed for lack of subject matter jurisdiction.

### C. The Court Does Not Possess Jurisdiction to Hear a Contract Claim Where Plaintiffs Have Not Submitted That Claim to the Contracting Officer

Even if the Board were not a NAFI, plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction because plaintiffs have not submitted their claim to the contracting officer pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613. Plaintiffs allege that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1491(a) ("the Tucker Act"). Compl. ¶ 5. The Tucker Act waives the United States" sovereign immunity for actions "founded either upon the Constitution, or any Act of Congress or any regulations of an executive department, or upon any express or implied contract with the United

States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, does not create a substantive right to recovery against the United States. United States v. Testan, 424 U.S. 392, 398-99 (1976). Instead, a claim for money damages must arise from a violation of the Constitution, a statute or regulation, or contractual rights which may be fairly interpreted as requiring the payment of compensation by the United States. Id. at 401-02.

Generally speaking, Congress has consented to be sued in this Court upon claims related to contracts with the Government, 28 U.S.C. § 1491(a). However, Congress established conditions upon that consent in cases involving contracts subject to the CDA. The CDA applies to any express or implied contract entered into by an executive agency for:

> (1) the procurement of property, other than real property in being;
> (2) the procurement of services;
> (3) the procurement of construction, alteration, repair or maintenance of real property; or:
> (4) the disposal of personal property.

41 U.S.C. § 602(a). The CDA also provides that "[a]ll claims by a contractor against the government . . . shall be in writing and shall be submitted to the contracting officer for decision." 41 U.S.C. § 605(a). Compliance with section 605(a) is a jurisdictional prerequisite to the filing of a complaint in this Court. W.M. Schlosser Co., Inc. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983); Paragon Energy Corp. v. United States, 227 Ct. Cl. 176, 184, 645 F.2d 966, 971 (1981), aff'd 230 Ct. Cl. 884 (1982); Litton Sys., Inc., v. United States, 27 Fed. Cl. 306 (1992).

Thus, in order for the Court to possess jurisdiction under the CDA, there must be a valid claim presented to the contracting officer. James M. Ellett Constr. Co. v. United States,

93 F.3d 1537, 1541 (Fed. Cir. 1996). "Under the CDA, a final decision by a CO on a 'claim' is a prerequisite for Board [or United States Court of Federal Claims] jurisdiction." Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (citing Sharman Co. v. United States, 2 F.3d 1564, 1568-69 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995)).

Absent a properly submitted claim and a final decision denying that claim, a contractor may not pursue a CDA-based suit in this Court. Dawco Constr., Inc. v. United States, 930 F.2d 872, 877 (Fed. Cir. 1991), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995). The Court and its predecessor repeatedly have dismissed claims because a contractor failed to present its claim to the contracting officer in accordance with the requirements of the CDA. See, e.g., Reliance Ins. Co. v. United States, 931 F.2d 863, 866 (Fed. Cir. 1991) (no jurisdiction to entertain bad faith claim not presented to the contracting officer); Deponte Investments, Inc. v. United States, 54 Fed. Cl. 112, 115-116 (2002) (no jurisdiction to entertain money claim for damages when no claim was presented to contracting officer); Witherington Constr. Corp. v. United States, 45 Fed. Cl. 208, 212 (1999) (no jurisdiction to entertain termination claim not made prior to suit); Earth Burners, Inc. v. United States, 43 Fed. Cl. 481, 489 (1999) (no jurisdiction to consider challenge to equitable adjustment award because contractor never submitted a termination settlement proposal); SMS Data Prod. Group, Inc. v. United States, 19 Cl. Ct. 612, 616 (1990) (dismissing lost profits claim not presented to the contracting officer).

Although plaintiffs only cite the Tucker Act in their complaint, the CDA clearly applies to their claim. The contract between plaintiffs and the Board was a contract for the procurement

of consulting and fund-raising services. Compl. ¶ 8; Attach. A(1). As such, plaintiffs should have complied with the requirements of the CDA. Because they did not submit any claim to the contracting officer, this Court does not possess jurisdiction over the claim, and it should be dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

For these reasons, the United States respectfully requests that this Court dismiss plaintiffs' complaint upon the grounds that this Court lacks subject matter jurisdiction to entertain their complaint pursuant to RCFC 12(b)(1).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s/ Carrie A. Dunsmore
CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576
Fax: (202) 514-8624

May 15, 2007

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 15th day of May, 2007, a copy of the Defendant's Unopposed Motion For An Enlargement Of Time was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Carrie A. Dunsmore
Carrie A. Dunsmore